UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - -

In re

SOUNDVIEW ELITE LTD., *et al.*

          Debtors.

- - - - - - - - - - - - - - - - - - - - - - - -

CORINNE BALL, as Chapter 11 Trustee of
SOUNDVIEW ELITE LTD.,

          Plaintiff,

    -against-

SOUNDVIEW COMPOSITE LTD.,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - -

Dist. Ct.
Case No. 14-cv-03179 (SAS)

Chapter 11 Case No. 13-13098-reg

Adv. P. No. 14-01923-reg

# REPLY MEMORANDUM OF LAW OF DEFENDANT
# SOUNDVIEW COMPOSITE LTD. IN SUPPORT OF ITS
# MOTION TO WITHDRAW THE REFERENCE

PETER M. LEVINE
Attorney for Defendant
99 Park Avenue, Suite 330
New York, New York 10016
(212) 599-0009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................. i

REPLY STATEMENT OF FACTS ........................................... 1

ARGUMENT ............................................................. 4

I.  THE COMPLAINT DOES NOT PRESENT A CLAIM
    FOR A TURNOVER ORDER .......................................... 4

    A.  *SUBSTANCE, NOT LABELS, DETERMINES THE
        NATURE OF THE CLAIM* ...................................... 4

    B.  *THE CLAIM IS SUBJECT TO SIGNIFICANT DISPUTE* ............. 5

        1.  The Trustee Cannot Invoke the Doctrine of Judicial Estoppel ...... 5

        2.  The Trustee Has No Claim for Equitable Estoppel ................ 7

    C.  *THE CLAIM IS NOT BASED ON A MATURE DEBT* ................ 8

II. THIS CASE MEETS THE STANDARD FOR WITHDRAWING
    THE REFERENCE ................................................. 9

    A.  *WITHDRAWING THE REFERENCE WILL NOT EFFECT
        THE UNIFORMITY OF BANKRUPTCY ADMINISTRATION* .......... 9

    B.  *COMPOSITE IS NOT FORUM SHOPPING* ....................... 10

# TABLE OF AUTHORITIES

*Adelphia Recovery Trust v. Goldman, Sachs & Co.*,
  2014 WL. 1327864 (2d Cir., April 4, 2014) .................................................................. 7

*Bates v. Long Island R.R. Co.*,
  997 F.2d 1028 (2d Cir. 1993) .................................................................................... 6

*Braunstein v. McCabe*,
  571 F.3d 108 (1st Cir. 2009) .................................................................................... 5

*Bridgeway Corp. v. Citibank*,
  201 F.3d 134 (2d Cir. 2000) .................................................................................... 5

*Christian Dior-New York, Inc. v. Koret, Inc.*,
  792 F.2d 34 (2d Cir. 1986) .................................................................................... 7

*Diversified Mortg. Investors v. U.S. Life Ins. Co. of N.Y.*,
  544 F.2d 571 (2d Cir. 1976) .................................................................................... 7

*In re Enron Corp.*,
  2004 WL. 2149124 (S.D.N.Y. Sept. 23, 2004) .......................................................... 10

*In re Formica Corp.*,
  305 B.R. 147 (S.D.N.Y. 2004) .................................................................................... 10

*Groupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
  119 S. Ct. 1961 (1999) .................................................................................... 6

*LaRouche v. Kezer*,
  20 F.3d 68 (2d Cir. 1994) .................................................................................... 7

*Maharaj v. Bankamerica Corp.*,
  128 F.3d 94 (2d Cir. 1997) .................................................................................... 5

*New Hampshire v. Maine*,
  121 S. Ct. 1808 (2001) .................................................................................... 5

*Rodal v. Anesthesia Group of Onondaga, P.C.*,
  369 F.3d 113 (2d Cir.2004) .................................................................................... 5

*Roslyn Union Free School Dist. v. Barkan*,
  16 N.Y.3d 643, 926 N.Y.S.2d 349 (2011) .................................................................. 5

*Schwartz v. Miltz*,
  77 A.D.3d 723, 909 N.Y.S.2d 729 (2d Dep't 2010) .................................................. 8

*Simon v. Safelite Glass Corp.*,
  128 F.3d 68 (2d Cir.1997) .................................................................................... 5

**REPLY STATEMENT OF FACTS**

According to the Trustee, this ostensible turnover proceeding is based upon "a matured debt, payable on demand because the 2011 Redemption Request was a valid redemption request which gave rise to a quantifiable debt." *Tr. Mem. 14*. This assertion contains many unproven assumptions: (1) a redemption request was made in July 2011, (2) the redemption request was in writing and signed by an authorized representative of Elite as required by Composite's Articles of Association, (3) if the person who signed the request was not authorized, the request was later ratified by an authorized representative of Elite, (4) the request was never rescinded or countermanded, (5) the request was delivered to HSBC Cayman, Composite's fund administrator, as required by the Private Placement Memorandum, (6) if the request did not comply with the Articles of Association or the PPM, Composite waived compliance through an authorized representative, (7) Composite's net asset value was known as of August 31, 2011.

Having gathered all of the records maintained by Elite and by Composite at the offices of Fletcher Asset Management, Inc., the Trustee should be able to support each assumption with a precise citation to Elite's or Composite's records. Instead, the Trustee resorts to the offensive tactic of launching ad hominem attacks on Alphonse Fletcher, Jr., which proves nothing,

According to the Trustee, Composite cannot challenge the alleged redemption request, because Fletcher "and entities he controlled were on both sides" of the request. *Tr. Mem 3. Accord id., p. 7*. If so, then the redemption should have been effected when Fletcher allegedly ordered it; but the alleged August 31, 2011 deadline came and went, and the redemption never occurred. Therein lies the fundamental flaw in the Trustee's theory. The fact that the redemption was not immediately honored at the behest of the man who supposedly initiated it means that Fletcher did not know of or authorize the request in July 2011 as alleged in the Complaint.

Had there been a redemption request as alleged in the Complaint, then HSBC Cayman

Limited, Composite's fund administrator, would have created a record of it, but the list of redemption requests prepared by HSBC Cayman did not include the alleged request. *Fletcher Aff., Ex. 4*. The Trustee ignores this evidence and, instead of providing proof of delivery, cites to the May 11, 2012 letter Alan de Saram dispatched to the Cayman Island Monetary Authority, but de Saram provided no proof that Elite had sent and HSBC Cayman had received the alleged request.

According to the Trustee, Composite consistently represented to CIMA that Elite had delivered a "valid" redemption request, which Composite would "honor." *Tr. Mem. 8*. The words "valid" and "honor" do not appear in either the May 11, 2012 letter or the July 10, 2013 letter. The May 11, 2012 letter nowhere states how Composite's directors "will fulfill their obligations to redeeming shareholders"[*Tr. Mem. 14*] and nowhere states that anything would be paid to Elite. The July 10, 2013 letter responded to a CIMA letter dated November 9, 2012, which asked: "How do the Directors intend to address the pending redemption requests?" *Fletcher Reply Dec., Ex. 2*. Rather than give an assurance of payment, the July 10, 2013 letter explicitly states that the request stood subject to the terms of the "governing documents," which refers to both the Articles of Association and the PPM. There is no statement in the letter that the purported request met the requirements of those documents and was valid. In line with these statements, during a telephone call on July 12, 2013 and in a subsequent exchange of notes, Composite and other funds managed by Soundview Capital Management Ltd. explained to CIMA officials that not all of the pending redemptions had been approved, some remained as just proposals, not all could be deemed liabilities, and all had t be reviewed. *Fletcher Reply Dec. ¶ 8*.

The Trustee attempts to bolster her claim by referring to a letter Deborah Midanek wrote to CIMA on May 28, 2013. This letter, says the Trustee, included a chart showing that Elite had "placed a full redemption request for trade date September 30, 2011." *Tr. Mem. 14-15*. This

hearsay document does not specify the information from which the chart was derived and casts doubt on its own reliability. *See Schneider Dec., Ex. H* ("The following information, drawn from the best available information but not necessarily current or complete"). This letter is also at variance with the allegations in the Complaint, which refers (at ¶ 33) to a "requested Redemption Date of August 31, 2011," yet another indication that the Trustee's claim is subject to significant dispute. The Trustee does not even attempt to explain how either version of the alleged redemption request meets the conditions on redemptions imposed by Composite's Articles of Association, which requires a redemption request to be in writing, signed by the holder, and delivered to the fund administrator. If the Trustee is referring to a redemption request proposed by Dean Rubino in June 2011, such a request was neither approved by Elite's investment manager nor dispatched to Composite's fund administrator. *Fletcher Reply Dec. ¶¶ 2-6*.

The Trustee cannot preclude Composite with an inaccurate interpretation of statements made by Elite's then-counsel, Warren Martin. Martin was not speaking on behalf of Composite and had no authority to acknowledge any debt owed by Composite. *Fletcher Reply Dec. ¶¶ 12-15*. Martin's letter of January 21, 2014, only conveyed Composite's willingness enter into a "consensual agreement" modifying an order of the Superior Court of Delaware dismissing an interpleader claim against Composite. He did not make any concession on behalf of Composite attesting to the validity of the redemption request. At the January 21, 2014 hearing on the application by Elite's Joint Official Liquidators for a TRO, Martin made clear he was representing Elite, not Composite. *See Schneider Dec., Ex. A, p. 9* ("without subjecting myself to a motion to be disqualified as representing parties that I shouldn't be representing and I don't represent"). He did no more than convey Composite's agreement that no funds would be moved out the Wilmington Trust account "absent the presentation of an acceptable consent order." *Id.* At the conference before Judge

Gerber on March 19, 2014, Martin, again speaking as counsel for Elite, not Composite, referred only to a "receivable" that the "trustee can pursue," not an undisputed and liquidated claim. *Id., Ex. C, p. 54*. Martin did not say, as the Trustee asserts, "that the debt was owed to Soundview Elite." *Tr. Mem. 16*. Composite was not represented at the conference, because its primary purpose was to discuss the payment of administrative claims by Elite, not to discuss anything pertaining to Composite. *Fletcher Reply Dec. ¶ 15*. The Trustee's discussion of the expert affidavit prepared by Martin on the motion to appoint a Chapter 11 trustee for Elite ignores all of the qualifying language in both the affidavit and the attached report. *Tr. Mem. 9*.

## ARGUMENT

### I. THE COMPLAINT DOES NOT PRESENT A CLAIM FOR A TURNOVER ORDER

#### A. *SUBSTANCE, NOT LABELS, DETERMINES THE NATURE OF THE CLAIM*

The Trustee's observation that "bankruptcy judges can constitutionally enter final judgments in turnover actions" [*Tr. Mem. 12*] misses the point. The issue here is whether the Trustee's claim may be regarded as a turnover proceeding in the first place. If not, then the bankruptcy court has no such power. Composite does not contend that it has a right to a jury trial in a turnover proceeding. Rather, Composite contends that the Trustee has in actuality pleaded a claim for breach of contract, and perforce Composite has a right to a jury trial.

The Trustee seeks to mask the contractual nature of her claim by asserting she is entitled to an accounting. *Tr. 9*. The Trustee is incorrect. If the Trustee can prove that she holds a valid redemption request, then the Trustee is entitled only to a calculation of Composite's net asset value as of the date of the request, which is the measure of her contractual damages. An accounting, by contrast, is an "equitable remedy . . . designed to require a person in possession of financial records to produce them, demonstrate how money was expended and return pilfered funds in his or

4

her possession." *Roslyn Union Free School Dist. v. Barkan*, 16 N.Y.3d 643, 653, 926 N.Y.S.2d 349, 355 (2011). The Trustee's case on this point, *Braunstein v. McCabe*, 571 F.3d 108 (1st Cir. 2009), illustrates the distinction. In *Braunstein*, the individual debtors lived on a houseboat, which was owned by a debtor company they controlled. After the houseboat was damaged, the debtors settled an insurance claim and commingled the insurance proceeds with the funds in their personal account. Without notifying the bankruptcy court, the debtors used the insurance proceeds to repair the houseboat. The trustee took possession of the houseboat and filed a complaint requesting, under 11 U.S.C. § 542, a turnover and accounting of estate property in the debtors' possession, including the insurance proceeds. Here, Composite's bank account did not belong to Elite prior to the filing of Elite's bankruptcy petition, and no funds belonging to Elite have been deposited into the account.

### B. THE CLAIM IS SUBJECT TO SIGNIFICANT DISPUTE

#### 1. The Trustee Cannot Invoke the Doctrine of Judicial Estoppel

Judicial estoppel may be applied to bar a party from asserting a factual position in a proceeding only when that party advanced a clearly inconsistent position in a prior proceeding and that inconsistent position was adopted by the court in some manner. *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141 (2d Cir. 2000); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997). The risk of inconsistent results must be certain. *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir.1997). Judicial estoppel can apply only when the allegedly inconsistent positions "cannot be reconciled with any amount of explanation." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir.2004). Judicial estoppel applies only when a tribunal in a prior proceeding has accepted the party's position by rendering a favorable decision. *Simon*, 128 F.3d at 72. *See New Hampshire v. Maine*, 121 S.Ct. 1808, 1815 (2001) ("Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little

threat to judicial integrity").

The Trustee seeks to invoke the doctrine of judicial estoppel based on Composite's "having admitted the existence of the debt and conceded its liquidated amount in order to defeat a motion for a temporary restraining order before Judge Gerber at the January 21, 2014 hearing." *Tr. Mem. 17*. This cavalier invocation of the doctrine must be rejected.

Far from prevailing, Composite suffered unmitigated defeat. Judge Gerber saw out of the corner of his eye the defenses Composite had to the motion: The JOLs sought a TRO without bringing an adversary proceeding under Bankruptcy Rule 7001; they sought affirmative relief from the United States courts without having filed a petition for recognition under Chapter 15 of the Bankruptcy Code; they sought an injunction to restrain a transfer from one non-debtor to another without explaining how Judge Gerber could have granted such relief in light of *Groupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 119 S.Ct. 1961 (1999) (in case involving only general creditor seeking damages at law and with no lien in specific property of defendant, Rule 65 may not be used to obtain prejudgment injunction). *Schneider Dec., Ex. A, pp. 7-8*. All of those defenses were rendered moot by Composite's capitulation engineered by Elite's counsel. *Id.* Also, pursuant to Rule 65(c), the JOLs would have been required to post a bond, but Martin's waivers absolved them of that obligation.

Judge Gerber did not deny the TRO. Instead, he accepted the proposal of Elite's counsel for Composite to keep the funds in its bank account in place pending the preparation of a consent order, which was more relief than the JOLs had requested. *Id., Ex. A, p. 10*. This "settlement neither require[d] nor implie[d] any judicial endorsement of either party's claims or theories, and thus [the] settlement [did] not provide the prior success necessary for judicial estoppel." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993). When settling, Composite did not admit the

6

existence of a debt and did not concede any liquidated amount. Composite could not have done so, because nobody was representing Composite at the hearing.

Judge Gerber did not rule on the validity of the redemption request. All he did was "preserve the status quo exactly as it is for the time being." *Schneider Dec., Ex. A, p. 13*. At that stage of the proceeding an adjudication of the merits would have been impossible. *See LaRouche v. Kezer*, 20 F.3d 68, 74 (2d Cir. 1994) ("a grant of provisional relief that merely preserves the status quo does not constitute final relief on the merits"); *Diversified Mortg. Investors v. U.S. Life Ins. Co. of N.Y.*, 544 F.2d 571, 576 (2d Cir. 1976) (preliminary injunction provides relief that is "interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness").

The Trustee's case on this point, *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 2014 WL 1327864 (2d Cir., April 4, 2014), is distinguishable. In *Adelphia*, a recovery trust for certain creditors of the parent corporation sought to recover a fraudulent conveyance from an account that the trust's predecessor-in-interest has agreed, as shown by the schedules and Chapter 11 plan, belonged to a separate subsidiary. Permitting the trust to claim ownership of the account "well after consummation of the plan of reorganization" in order to pursue the claim would have been "inconsistent with the factual underpinnings of this duly confirmed and substantially consummated bankruptcy plan" and would have "threaten[ed] the integrity of the bankruptcy proceedings."

### 2. The Trustee Has No Claim for Equitable Estoppel

The Trustee has not come close to establishing a claim for equitable estoppel. *Tr. Mem. 17*. The elements of such a claim are: (1) words or conduct that amount to a misrepresentation or concealment of fact; (2) reasonable reliance on the representation; and (3) a prejudicial change in position, i.e., injury, caused by the reliance. *Christian Dior-New York, Inc. v. Koret, Inc.*, 792 F.2d

34, 37 (2d Cir. 1986); *Schwartz v. Miltz*, 77 A.D.3d 723, 909 N.Y.S.2d 729 (2d Dep't 2010). The Trustee's papers are devoid of evidence establishing any of these elements.

### C.  THE CLAIM IS NOT BASED ON A MATURE DEBT

The Trustee refers to "the possibility that redemptions could be 'gated' or suspended." *Tr. Mem. 6*. The Trustee has misread the PPM. Gating is not a "possibility" but an explicit limitation that applies to all redemptions unless "waived by the Directors in their sole discretion." *Fletcher Aff., Ex. 2, p. 32*. The Trustee has adduced no evidence that the gate was ever waived by Composite's directors. Instead, the Trustee refers to a comment made by Ann Loeb, an employee of an affiliated corporation, in the midst of an e-mail exchange with Composite's Cayman Island counsel, Alan de Saram, prior to the dispatch of de Saram's May 11, 2012 letter to CIMA. *Tr. Mem. 8*. Loeb's statement is contrary to the PPM, which de Saran obviously did not review prior to dispatching his letter. Loeb's opinion that "there was no reason to" gate the redemption cannot change the terms of the PPM, and is also invalid. There is a reason to gate the redemption, even if Composite has only one investor. The gating will give Composite additional time to maximize the value of its holdings while the redemption is paid over time. *Fletcher Reply Dec. ¶ 11*.[1]

The Trustee proceeds from the mis-impression that the amount of the redemption is equal to at least the cash in the Composite account. *Tr. Mem. 9*. No, the value of the redemption is based on "the then current Net Asset Value per Share." *Fletcher Aff., Ex. 2, p. 30*. The Trustee has proffered no admissible evidence of Net Asset Value. Instead, the Trustee has presented "estimates" contained in hearsay documents. One of them, Midanek's letter of June 13, 2013, is consistent with

---

[1] The Trustee fails to note the sentence following the quoted passage from Ann Loeb's e-mail: "Mike can you pleas provide Alan with the date Elite submitted its full redemption request to Soundview Composite." *Schneider Aff., Ex. F., p. 3*. This information was never provided, even though de Saram made a follow-up demand [*id., p. 2*], another indication that no valid redemption request was ever made.

8

the position advanced by Composite on this motion: "The directors have . . . been working to *analyze the situation* of each Fund and to develop the plan that will most favorably address pending redemptions, recover assets for shareholders, *clarify each shareholder and redemption creditor's position*, and return the highest possible amount of capital to each." *Schneider Dec., Ex. K., p. 3.*

## II. THIS CASE MEETS THE STANDARD FOR WITHDRAWING THE REFERENCE

### A. *WITHDRAWING THE REFERENCE WILL NOT EFFECT THE UNIFORMITY OF BANKRUPTCY ADMINISTRATION*

The ultimate question to be answered in this action is, Did Elite deliver a valid redemption request to Composite's fund administrator? If not, the Trustee has no claim. The answer to this question will not be found in the so-called "tangle of entities created and ultimately controlled by Alphonse Fletcher, Jr." *Tr. Mem. 1.* Nor will the answer be found in the Bankruptcy Code. The answer will found in the contracts governing the transaction and state law governing the interpretation of those contracts. The bankruptcy court brings no special experience or expertise to applying state law to the contractual text. The Trustee's proclamation of Judge Gerber's "expertise with the complex circumstances surrounding this proceeding" [*id., 4-5*] is belied by her Complaint (at ¶ 2): "this is a straightforward action."

The Trustee nowhere explains how an insight into the affairs of a third-party, Fletcher International Ltd., will help resolve the dispute between Elite and Composite. *Tr. Mem. 2.* Nor does the Trustee explain the relevance of the complaint in *Fletcher Int'l Ltd. v. Fletcher* or the report prepared by the Fletcher International trustee, two hearsay documents that nowhere mention either Elite or Composite. *Schneider Dec., Exs. O & P.* Nor does the Trustee explain how the resolution of this case will depend on an analysis of any "fund structure" beyond the relationship between Elite and Composite. *Tr. Mem. 19.* The Trustee professes to fear inconsistent rulings [*id., 21*] but does not provide a single example of a potential inconsistency; does not cite a single case with identical

9

parties, similar issues or overlapping facts; and does not provide a single example among the alleged "redemptions and transfers" that will have to be analyzed to resolve the dispute between Elite and Composite. *Id.*, 5. The Trustee also fails to explain how any decision in this case could affect the plan of liquidation for Fletcher International or have any impact upon other debtors. *Id.*, 10.

### B. COMPOSITE IS NOT FORUM SHOPPING

The Trustee's accusation of forum shopping is without merit. Composite has a bona fide entitlement to a jury trial in this non-core proceeding.

The Trustee's two cases on this point are distinguishable. In *In re Formica Corp.*, 305 B.R. 147, 151 (S.D.N.Y. 2004), the plaintiff filed a proof of claim in bankruptcy court then filed a separate action alleging essentially the same claim in state court then delayed in submitting a motion to withdraw the reference until well after a motion to dismiss was filed in the bankruptcy court. Composite has engaged in no such tactics here. In *In re Enron Corp.*, 2004 WL 2149124, 3 -4 (S.D.N.Y. Sept. 23, 2004), the portion of the decision concerning forum shopping was *dicta*. The court declined to withdraw the reference because the case shared factual and legal issues with many other adversary proceedings and because withdrawing the case would have defeated the purpose of a mediation order.

Dated: New York, New York
       May 30, 2014

PETER M. LEVINE (PML-7630)
Attorney for Soundview Composite, Ltd.
99 Park Avenue, Suite 330
New York, New York 10016
(212) 599-0009