**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

In re

**SOUNDVIEW ELITE LTD.,** *et al.,*

　　　　　　　　**Debtors.**

------------------------------------------------------

**CORINNE BALL, as Chapter 11 Trustee**
**of SOUNDVIEW ELITE LTD.,**

　　　　　　　　**Plaintiff,**

　　　　　　　　**- against -**

**SOUNDVIEW COMPOSITE LTD.,**

　　　　　　　　**Defendant.**

------------------------------------------------------ X

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED:  7/3/14         │
└─────────────────────────────┘
```

**OPINION AND ORDER**

**Chapter 11 Case No. 13-13098**
**(Jointly Administered)**

**14-cv-3179 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

　　　　　Defendant Soundview Composite Ltd. moves to withdraw the

reference to the Bankruptcy Court of an adversary proceeding brought by Corinne

Ball, as Chapter 11 Trustee of Soundview Elite Ltd., seeking turnover and an

accounting pursuant to section 542 of Title 11 of the United States Code ("section

542"). For the reasons set forth below, defendant's motion to withdraw the

reference is DENIED without prejudice.

1

## I.     BACKGROUND

### A.     The Parties

In September 2013, Soundview Elite Ltd. (the "debtor"), a mutual fund registered under the laws of the Cayman Islands, and five related entities (the "related debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[1]  These cases are being jointly administered and have been assigned to Judge Robert E. Gerber, who is also presiding over a related chapter 11 case filed by Fletcher International Ltd.  A significant link between these cases is Alphonse Fletcher, Jr., who is a director of the debtor, defendant, and non-debtor Soundview Capital Management Ltd., the investment manager of both the debtor and defendant.[2]  Defendant, a non-debtor, is also a fund organized under the laws

---

[1]     *See* Trustee's Memorandum of Law in Opposition to Soundview Composite's Motion to Withdraw the Reference ("Pl. Mem."), at 10.

[2]     *See* 5/2/14 Affidavit of Alphonse Fletcher, Jr. in support of defendant's motion to withdraw the reference ("Fletcher Aff.") ¶ 1.  In January 2014, Richard J. Davis, the chapter 11 trustee appointed in the Fletcher International Ltd. bankruptcy, issued a report "outlining some of the alleged misconduct that took place with respect to the Fletcher-related entities and concluding, among other things, that in many ways the fraud here has many of the characteristics of a Ponzi scheme, where, absent new investor money coming in, the overall structure would collapse due to an inability to meet existing redemption and other obligations."  Pl. Mem. at 2 (quotation marks and alterations omitted).

of the Cayman Islands.[3]  The debtor is defendant's sole non-voting shareholder.[4]

**B.    The Adversary Proceeding**

The Complaint purports to assert a straightforward turnover claim pursuant to section 542.[5]  The Complaint alleges that the debtor purchased certain class H shares from defendant under a Private Placement Memorandum,[6] and later "forwarded a[ ] request for redemption of its [ ] holdings of shares . . . with a requested Redemption Date of August 31, 2011 (the "2011 Redemption Request")."[7]  The Complaint states that there is no question as to the validity of the 2011 Redemption Request, which was confirmed by defendant in letters to the Cayman Islands Monetary Authority in 2012 and 2013 (the "Cayman Letters").[8] The Complaint further alleges that the two exceptions to honoring a redemption

---

[3]    *See* Complaint Under 11 U.S.C. §§ 541 and 542 for Turnover and An Accounting of Estate Property and Attorneys' Fees, Costs and Litigation Expenses (the "Complaint"), Ex. 1 to 5/2/14 Affidavit of Peter M. Levine, defendant's counsel, filed in support of motion to withdraw the reference, ¶ 5.

[4]    *See* Fletcher Aff. ¶ 3.

[5]    *See* Pl. Mem. at 13.

[6]    *See* Complaint ¶¶ 15-16.

[7]    *Id.* ¶ 33.

[8]    *See id.* ¶¶ 36-37.

request under the Private Placement Memorandum – "gating"[9] and "suspen[sion]"[10] – do not apply to the 2011 Redemption Request, a fact which is also confirmed by the Cayman Letters.[11]  Notwithstanding the 2011 Redemption Request, defendant has not made any payments to the debtor.[12]

The Complaint acknowledges that "it is difficult to assemble records showing the exact Net Asset Value of Debtor['s] holding of [the] H Shares at the time the 2011 Redemption Request was issued," and defines this sum as the "Owed

---

[9]    *Id.* ¶ 23 ("The Private Placement Memorandum provided that '[t]he right to redeem is contingent upon the Fund having sufficient assets to discharge its liabilities on the Redemption Date.'  (Private Placement Memorandum at 31)  The Private Placement Memorandum also purported to limit the value of shares to be redeemed on any given Redemption to 10% of the Net Asset Value of the fund, unless such limitation is waived by the Directors (Private Placement Memorandum at 32) – this limitation was apparently referred to colloquially as a 'gating' requirement.").

[10]    *Id.* ¶ 24 ("The Private Placement Memorandum also stated that the Directors may suspend redemptions and the determination of Net Asset Value under certain circumstances.  (Private Placement Memorandum at 34)").

[11]    *See id.* ¶¶ 36-37.  For example, the Complaint alleges that "[i]n response to the Cayman Islands Monetary Authority's question about whether redemptions or the calculation of Net Asset Value had ever been gated or suspended, Soundview Composite wrote [in May 2012]: 'With respect to the Fund, it has never been gated or suspended.  It has only one investor, Soundview.'"  *Id.* ¶ 36.

[12]    *See id.* ¶ 41.

Amount."[13]  However, the Complaint alleges that $3.875 million of the Owed Amount is liquidated, because in December 2013, prior to the appointment of the trustee, Bernard A. Katz, an expert appearing on behalf of the debtor, reported to the bankruptcy court that as of July 31, 2013, "the value of Soundview Elite's redemption receivables owed to it by Soundview Composite was approximately $3.875 million, with an additional $469,000 owed as an investment receivable."[14] But "[p]laintiff expects that a more accurate valuation of Debtor Soundview Elite's holdings and investment in Soundview Composite will have to be conducted, with the assistance of expert analysis and testimony, at trial."[15]

In addition, plaintiff argues that there is no genuine dispute that the debt is matured and payable because on January 21, 2014, Warren Martin ("Martin"), appearing as counsel for the then debtor-in-possession at a status conference, acknowledged the debt, stating that:

---

[13]     *Id.* ¶ 38.

[14]     *Id.* ¶ 39.  *See* also 12/2/13 Affidavit of Bernard A. Katz in Support of Debtors' Opposition to Motions to Dismiss, Convert or Appoint a Chapter 11 Trustee, Ex. E to Declaration of Jordan M. Schneider, counsel to plaintiff, in Support of the Trustee's Memorandum of Law in Opposition to Soundview Composite's Motion to Withdraw the Reference ("Schneider Decl."), at 1, 8.

[15]     Complaint ¶ 40.

> I mean, without subjecting myself to a motion to be disqualified as representing parties that I shouldn't be representing and I don't represent, the managers of the Soundview debtors, who are my clients, are the identical managers of the Soundview Composite, which is the entity that owns these funds. And we all recognize the debt – it's in our papers, as I pointed out in my letter – that runs from Soundview Composite to Soundview Elite. I have the representation from those people who do stand as my clients, with respect to the Soundview debtors, that Soundview Composite will do nothing to move those funds absent the presentation of an acceptable consent order to the Court. I take that representation at face value. I accept it. I think the – particularly given the long road that we have all traveled on in these cases, that it would be an exercise that would make no sense to do something other – something else with these funds, other than protect them and to make sure that to the extent that Soundview Elite has the primary claim, that Soundview Elite's claim is satisfied.[16]

In addition, at a conference after the appointment of plaintiff as trustee, Martin stated that "there's a 3.8-million-dollar receivable from a related entity [*i.e.*, Soundview Composite]," which has "consent[ed] . . . to freeze that 3.8 million dollars so that the trustee can pursue that receivable."[17]

---

[16]     1/21/14 Transcript, Ex. A to Schneider Decl., at 9.  *See also* 1/21/14 Letter from Martin to Judge Gerber, Ex. B to Schneider Decl., at 1 ("The Soundview Debtors support preserving and protecting non-debtor affiliate Soundview Composite's funds of approximately $3.874 million, particularly given the fact that the Soundview Debtors presented evidence at trial that Soundview Composite owes Soundview Elite that amount, and particularly given the fact that both the Debtors and non-Debtor Soundview Composite are managed by the same entity, Soundview Capital Management.").

[17]     3/19/14 Transcript, Ex. C to Schneider Decl., at 54.

**C.     Procedural History**

Plaintiff filed the Complaint on April 1, 2014, and defendant filed an Answer on May 2, 2014, the same day it filed its motion to withdraw the reference. Plaintiff filed a motion for summary judgment in the bankruptcy court on May 19, 2014, defendant filed opposition on June 16, 2014, and plaintiff filed a reply on June 20, 2014.

**II.     LEGAL STANDARD**

**A.     Permissive Withdrawal from the Bankruptcy Court**

Under section 157(d) of Title 28 of the United States Code, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  As a general rule, "courts should employ withdrawal judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court."[18]  The moving party bears the burden of establishing that permissive withdrawal is warranted.

In *In re Orion Pictures Corporation*, the Second Circuit held that

---

[18]     *Schneider v. Riddick (In re Formica Corp.)*, 305 B.R. 147, 149-50 (S.D.N.Y. 2004) (quotation marks omitted).

whether cause has been shown depends on a number of factors.[19]  These include

whether the proceeding is core or non-core and, if a jury demand has been made,

whether the proceeding is legal or equitable, as well as considerations of judicial

economy, uniformity of bankruptcy administration, reduction of forum shopping,

economical use of debtors' and creditors' resources, and expediting the bankruptcy

process.[20]  The relevance of the core/non-core inquiry is that absent the consent of

the parties, only Article III judges can enter final judgments in proceedings that are

not core.[21]  When a matter is non-core, and absent the consent of the parties, a

bankruptcy judge must issue proposed findings of fact and conclusions of law that

are reviewed de novo by the district court.[22]  Thus, the determination that a matter

---

[19]     *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) ("*Orion*").

[20]     *See id.  Accord Kenai Corp. v. National Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992).

[21]     *See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52, 87 (1982) ("*Marathon*") (concluding that permitting Article I bankruptcy judges to enter final judgments on state-law claims violates Article III of the Constitution).

[22]     *See* 28 U.S.C. § 157(c).  For this reason, section 157(b)(3) directs the bankruptcy court to determine whether a proceeding is core or non-core.  That determination is aided by section 157(b)(2), which provides a non-exhaustive list of core matters.  However, in *Stern v. Marshall*, the Supreme Court held that although section 157(b)(2)(C) designates as core "counterclaims by the estate against persons filing claims against the estate," Article III prohibits a bankruptcy

is not core may support withdrawal of the reference if the district court

"conclude[s] that . . . unnecessary costs could be avoided by a single proceeding in

the district court."[23]  However, "the core/non-core distinction" is often a

"distinction without a difference" because the other *Orion* factors may counsel in

favor of allowing the proceeding to remain in the bankruptcy court through the pre-

trial stages of the action even if it is not core.[24]  Indeed, the bankruptcy court's

issuance of proposed findings of fact and conclusions of law may promote judicial

---

court from entering "a final judgment on a state law counterclaim that is not
resolved in the process of ruling on a creditor's proof of claim." *Stern v. Marshall*,
564 U.S. __, 131 S. Ct. 2594, 2620 (2011).  Similarly, in *Orion* the Second Circuit
rejected the district court's determination that a state-law breach of contract claim
was core under section 157(b)(2)(A), which states that "matters concerning the
administration of the estate" are core.  *Orion*, 4 F.3d at 1102.  The Second Circuit
reasoned that if section 157(b)(2)(A) were used to transform an action to collect a
disputed pre-petition account receivable into a core proceeding, it would "create[]
an exception to *Marathon* that would swallow the rule." *Id.*  Accordingly, while
section 157(b)(2) is a useful starting point, courts must analyze the nature of the
claim asserted to determine whether the bankruptcy court has the constitutional
authority to enter a final judgment.

[23]      *Orion*, 4 F.3d at 1101.

[24]      *Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power
Mktg., Inc.*, No. 01 Civ. 7964, 2003 WL 68036, at *10 (S.D.N.Y. Jan. 8, 2003).
*Accord Northeast Indus. Dev. Corp. v. ParkStone Capital Partners, LLC (In re
Northeast Indus. Dev. Corp.)*, --- B.R. ----, No. 14 Civ. 2694, 2014 WL 2253322,
at *1 (S.D.N.Y. May 28, 2014) ("While the core/non-core determination is an
important factor, courts have repeatedly emphasized that this factor is not
dispositive of a motion to withdraw a reference.") (collecting cases).

9

economy and aid the district court, particularly where the bankruptcy court is

familiar with the underlying bankruptcy case, the adversary proceeding, and/or the

substantive bankruptcy law applicable to the proceeding.[25]

### B. Bankruptcy Courts May Enter Final Judgments in "True" Turnover Proceedings and Such Proceedings Do Not Give Rise to a Right to a Jury Trial

A core policy of the Bankruptcy Code is marshaling estate assets.[26]

Several provisions of the Bankruptcy Code serve this purpose, including section

---

[25]      *See, e.g.*, *Northeast Indus. Dev. Corp.*, 2014 WL 2253322, at *2 (explaining that "[i]f a motion for summary judgment were granted, the District Court would review the decision *de novo*, but the decision by the Bankruptcy Court would be helpful to the Court and the District Court's review would not be a separate and additional litigation.  If the adversary proceeding progressed to trial, [defendant] could seek to withdraw the reference at that time.") (citations omitted); *Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*, --- F. Supp. 2d ----, No. 14 Civ. 293, 2014 WL 1877937, at *4 (S.D.N.Y. May 10, 2014) (same); *Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012) (holding that although bankruptcy court lacked final adjudicatory authority district court would benefit from proposed findings of fact and conclusions of law); *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 723-25 (S.D.N.Y. 2012) (same); *Wedtech Corp. v. Banco Popular de P.R. (In re Wedtech Corp.)*, 94 B.R. 293, 297 (S.D.N.Y. 1988) (refusing to withdraw the reference at the pre-trial stage, stating that to do so "would defy logic, and be a gratuitous and unnecessary waste of judicial resources," whereas leaving the reference undisturbed provided a "unique and compelling opportunity to promote judicial economy and swift resolution, to the benefit of both parties").

[26]      *See, e.g.*, *Toibb v. Radloff*, 501 U.S. 157, 163 (1991) (recognizing "the general [Bankruptcy] Code policy of maximizing the value of the bankruptcy estate.").

541(a)(1), which defines property of the estate broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case."[27] Section 541(a)(1) also "include[s] in the estate any property made available to the estate by other provisions of the Bankruptcy Code[,]" such as those that "bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy [case] commenced."[28]  Section 542 "is such a provision."[29]

With certain exceptions, paragraph (a) of section 542 requires an entity holding *property* of the debtor to turn it over to the trustee, and paragraph (b) mandates the same for an entity that owes certain kinds of *debts* to the debtor. Specifically, under section 542(b), "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee . . . ."  "In order for a claim to be considered a matured debt, it must be specific in its terms as to amount due and

---

[27]     *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.") (quotation marks omitted).  *Accord Garcia v. Garcia (In re Garcia)*, 494 B.R. 799, 810 (Bankr. E.D.N.Y. 2013) (stating that property of the estate includes "contract rights and the interests arising from them").

[28]     *United States v. Whiting Pools*, 462 U.S. 198, 205 (1983).

[29]     *Id.*

date payable."[30]  A debt is "matured or payable on demand" if it is "presently

payable, as opposed to . . . contingent and [ ] payable only upon the occurrence of a

certain act or event."[31]  In other words, section 542(b) is concerned with "the

collection rather than the creation, recognition, or liquidation of a matured debt."[32]

Orders to turn over property of the estate are expressly listed as core

proceedings under section 157(b)(2)(E).  The scope and purpose of turnover

proceedings suggests that, as a general matter, this classification survives *Stern*.[33]

In addition, turnover proceedings are inherently equitable in nature and do not

---

[30]     *Tese-Milner v. TPAC, LLC (In re Ticketplanet.com)*, 313 B.R. 46, 67 (Bankr. S.D.N.Y. 2004).  *Accord Shea & Gould v. Red Apple Cos. (In re Shea & Gould)*, 198 B.R. 861, 867 (Bankr. S.D.N.Y. 1996) ("Whether a claim for an overdue account can be described as a matured debt depends on whether it is specific in its terms as to amount due and date payable.") (quotation marks omitted).

[31]     *Securities Investor Prot. Corp. v. Rossi (In re Cambridge Capital, LLC)*, 331 B.R. 47, 57 (Bankr. E.D.N.Y. 2005) (quotation marks omitted).  *Accord Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009) ("A turnover action is not an action to recover damages for the taking of estate property[, it is] an action to recover possession of property belonging to the estate at the time of the filing.").

[32]     *Cambridge Capital*, 331 B.R. at 57 (quotation marks omitted).

[33]     *See, e.g.*, *Braunstein*, 571 F.3d at 122 (explaining that turnover actions "invoke[] the court's most basic equitable powers to gather and manage property of the estate").

involve a right to a jury trial.[34]  Not surprisingly, "the reported post-*Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter final judgments in turnover actions."[35]  But not every proceeding styled as a turnover action properly seeks to collect a matured debt:

> [T]he turnover power can be improperly invoked, especially when it is used as a Trojan Horse for bringing garden variety contract claims; when the property in question is not already property of the estate; or when the turnover statute is used to recover assets with disputed title when the estate's claim of ownership is legitimately debatable.  It is well established that the turnover power may not be used for such purposes.[36]

"[S]uch an action can only constitute, at the most, non-core rather than core

---

[34]    *See, e.g.*, *id.* at 115 ("The majority of the precedent, from the district and bankruptcy courts, holds there is no jury trial right on a trustee's turnover claim.") (collecting cases).

[35]    *Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 850 (Bankr. S.D.N.Y. 2013) (collecting cases).

[36]    *Id.* at 852 n.39.  *Accord In re Fairfield Sentry Ltd.*, 458 B.R. 665, 683 (S.D.N.Y. 2011) ("Numerous courts have [ ] held that an action is non-core when property which is the subject of a significant dispute between the parties is sought to be recovered through a turnover action.") (quotation marks omitted); *Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996) ("'It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.'") (quoting *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991)).

proceedings, given that such actions are not true turnover actions."[37]  Because a

bankruptcy court's authority to enter a final judgment turns on the true nature of

the claim, "[c]ourts presented with claims styled as turnover actions face the

complicated task of navigating the blurry divide between bona fide turnover

actions, which are core  . . . , [and] collection actions under state law," such as

breach of contract claims, "which are non-core under both *Marathon* and *Stern*."[38]

## III.   DISCUSSION

Defendant has not demonstrated cause for withdrawing the reference.

A trustee's exercise of the turnover power is typically a core proceeding for which

there is no right to a jury trial.  Recognizing this, defendant argues that the

adversary proceeding is not a true turnover proceeding because, among other

things, there are significant disputes, including whether the debtor delivered a valid

---

[37]     *DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 220 (Bankr. D. Del. 2010) (quotation marks omitted). *Accord J.T. Moran Fin. Corp. v. American Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 938 (S.D.N.Y. 1991) ("Where, as here, the court must resolve whether or not the debt claimed is due, the action to collect the disputed funds cannot be regarded as a turnover proceeding under the core jurisdiction of the bankruptcy court.").

[38]     *Burns v. Dennis (In re Southeastern Materials, Inc.)*, 467 B.R. 337, 354 (M.D.N.C. 2012).

redemption request and whether the gating limitation was waived.[39]  Defendant

also rejects plaintiff's arguments that defendant is precluded under the doctrines of

judicial and equitable estoppel from denying that the debt is matured and payable

on demand based on the representations made in proceedings before Judge

Gerber.[40]

However, judicial economy and efficiency are better served by having

Judge Gerber determine whether this is a legitimate turnover action, and to do so in

the context of deciding plaintiff's motion for summary judgment.  *First*, it will be

more efficient, and provide a benefit to this Court on review, to have Judge Gerber

determine the nature of plaintiff's claim in the first instance because he has

"greater familiarity and expertise" in parsing the subtle distinction between true

turnover proceedings and improperly labeled contract actions.[41]  *Second*, this Court

will also benefit from Judge Gerber's prior consideration of the parties' estoppel

dispute, because that dispute hinges on proceeding held before him.  Finally,

---

[39]    *See* Reply Memorandum of Law of Defendant Soundview Composite Ltd. in Support of Its Motion to Withdraw the Reference, at 4, 8-9.

[40]    *See id.* at 5-8.

[41]    *LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.)*, 193 B.R. 669, 675 (S.D.N.Y. 1996) (explaining that "[c]ore matters are ones with which the bankruptcy court has greater familiarity and expertise, subject to appellate review by the district court").

resolution of the core/non-core issue is closely intertwined with the merits of

plaintiff's motion for summary judgment, making it more efficient for a single

judge to rule on both issues at the same time.  For the reasons just discussed, it

makes the most sense for that judge to be Judge Gerber.[42]

        Additional *Orion* factors also fail to support withdrawal of the

reference.  *First*, plaintiff has sufficiently raised the specter of forum shopping.

Plaintiff points out that at a conference held just over two weeks before defendant

filed its motion to withdraw, defendant appeared to disavow its earlier

representations acknowledging the debt and agreeing to hold the liquidated portion

of the Owed Amount in escrow.[43]  In response, Judge Gerber stated, among other

things, that "when lawyers play three card monte, it gets me very upset.  So I'm

going to have to look at whatever you have to explain these changes in apparent

position with great care, because I was under the understanding that the money . . .

would not be messed with."[44]  *Second*, denying the motion to withdraw will

---

[42]    I also credit plaintiff's argument that it will be more expedient to have
Judge Gerber preside over the adversary proceeding because he has greater
knowledge of the entities, funds, and transfers involved in the chapter 11 cases
of the debtor and the related debtors, which may be relevant to the disposition of this
adversary proceeding.  *See* Pl. Mem. at 19.

[43]    *See id.* at 20 (citing Schneider Decl. Exs. A, B, C, and E).

[44]    4/15/14 Transcript, Ex. N to Schneider Decl., at 32.

promote uniformity of bankruptcy administration.  The determination of whether
this action is a legitimate turnover proceeding requires an analysis under section
542.  To the extent that Judge Gerber determines that plaintiff's action was
properly brought under section 542, his analysis of a core turnover claim will also
promote uniformity in the bankruptcy law.  In addition, I give some weight to
plaintiff's suggestion that it would be disruptive to have multiple judges
adjudicating separate but related issues in the chapter 11 cases of the debtor and the
related entities.[45]  Finally, there is no prejudice to defendant in denying its motion
at this stage in the proceedings because this Court will apply the same standard of
review regardless of whether Judge Gerber enters an appealable judgment on the
motion for summary judgment or submits proposed findings of fact and
conclusions of law.[46]  While the Complaint suggests a trial will be necessary even

---

[45]     *See* Pl. Mem. at 21.  Having multiple courts adjudicating matters
connected with these bankruptcies would also not likely "expedite" the bankruptcy
process.

[46]     *See Executive Benefits Ins. Agency v. Arkison*, 573 U. S. __, 134 S. Ct.
2165, 2174 (2014) ("At bottom, EBIA argues that it was entitled to have an Article
III court review *de novo* and enter judgment on the fraudulent conveyance claims
asserted by the trustee.  In effect, EBIA received exactly that.  The District Court
conducted *de novo* review of the summary judgment claims, concluding in a
written opinion that there were no disputed issues of material fact and that the
trustee was entitled to judgment as a matter of law.  In accordance with its statutory
authority over matters related to the bankruptcy, *see* § 1334(b), the District Court

17

if the plaintiff prevails on summary judgment,[47] if this matter is deemed non-core

and proceeds to trial, defendant can renew its request to withdraw the reference at

that time.[48]  Accordingly, the balance of the *Orion* factors weigh against granting

defendant's motion to withdraw the reference pursuant to section 157(d).[49]

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion is DENIED without

---

then separately entered judgment in favor of the trustee.  EBIA thus received the
same review from the District Court that it would have received if the Bankruptcy
Court had treated the fraudulent conveyance claims as non-core proceedings under
§ 157(c)(1).  In short, even if EBIA is correct that the Bankruptcy Court's entry of
judgment was invalid, the District Court's *de novo* review and entry of its own
valid final judgment cured any error.").

[47]   *See* Complaint ¶ 15 (stating that trial will be necessary to determine
the unliquidated portion of the Owed Amount).

[48]   *See, e.g.*, *Kirschner*, 476 B.R. at 83 (explaining that "while Movants
cite to their jury demand as a reason to withdraw the reference now, the Court may
withdraw the reference if and when a trial is necessary").

[49]   *See, e.g.*, *Times Circle East, Inc. v. Edward Isaacs & Co. (In re Times
Circle East, Inc.)*, No. 95 Civ. 2838, 1995 WL 489551, at *3 (S.D.N.Y. Aug. 15,
1995) (citing judicial economy, uniform administration of bankruptcy laws, and
prevention of forum shopping as reasons for denying motion to withdraw); *Kenai
Corp.*, 136 B.R. at 61-62 (denying motion to withdraw reference of non-core
proceeding still in its preliminary stages where "the interests of judicial economy
and sound judicial administration militate[d] in favor of denying defendants
motion to withdraw" and defendants had failed to show how denial of motion to
withdraw would prejudice them).

prejudice.  The Clerk of the Court is directed to close this motion [docket # 1] and

this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              July 3, 2014

19

**- Appearances -**

**For Plaintiff:**

Veerle Roovers, Esq.
Stephen Pearson, Esq.
Amy Edgy Ferber, Esq.
JONES DAY
222 East 41st Street
New York, New York 10017
(212) 326-3939

**For Defendant:**

Peter M. Levine, Esq.
99 Park Avenue
Suite 330
New York, New York 10016
(212) 599-0009